I'm going on now and I'm going to present to you Mr. Benford Gardner. Your Honor, this is not the run-of-the-mill withdrawal of a guilty plea case. The great majority of those cases that I've read that appeared in this court and were considered by this court, defendant pleads guilty, later gets his pre-sentence report back and sees the recommended range of punishment or talks to his jailhouse buddies and decides at some point he's sick and he'd like to start over. And in that case, the court invariably finds that under the seven car factors in U.S. v. car that he has not articulated a fair and just reason to withdraw his plea. That is not the case in this situation, Your Honor. I found one case in which this court found that the district court had abused its discretion in refusing to allow a defendant to withdraw his plea of guilty. That was U.S. v. McDonald in 2011. And our case, Your Honor, is exactly on point, factually, with U.S. v. McDonald. In McDonald, the defendant filed a motion to suppress evidence that was denied. He then later pled guilty when his lawyer told him that he would be allowed to appeal his denial of the motion to suppress evidence after he pled guilty. It clearly was incorrect. He, by pleading guilty, he waived all previous non-jurisdictional defects. So then he later did file a motion to withdraw his plea of guilty under the car factors and primarily under the sixth car factor, which is apparently, to all cases that I've seen, the most important. And that is that the plea of guilty was made involuntarily. And it was made involuntarily because it was based on ineffective assistance of counsel. That is a clearly held rule in this court, in this circuit. There was a long trail of deficient, inattentive, subpar performance by the first lawyer. I should clarify, there was the first retained lawyer who, we are alleging, committed ineffective assistance of counsel. Then there is a second lawyer appointed later to replace him. No, he did not file any motions, did not file any challenges, showed up for the first re-arrangement with the plea bargain agreement in hand that he had not discussed with the defendant. And in the five minutes after the defendants are brought into the courtroom, he wants to discuss the plea bargain agreement. He has to ask for an oral motion to continue. It's reset for a re-arrangement. He comes back again, still has not been out to the jail to talk to Mr. Gardner about this proposed plea bargain agreement or about this motion to suppress evidence that Mr. Gardner wants. He has to ask for another oral motion for continuance. Re-arrangement is continued. Again, he comes back for the third re-arrangement. Now, four more weeks later, he still has not been out to the jail to talk to Mr. Gardner about the proposed plea bargain agreement or the motion to suppress evidence that Mr. Gardner wants. Mr. Gardner finally goes ahead and pleads guilty. The attorney shows up for the first sentencing hearing and has to, again, ask for an oral motion for continuance because he hasn't filed his objections to the pre-sentence report that Judge Grant set. And at that point is when the first retained lawyer tells Mr. Gardner, oh, by the way, I'm not going to be able to file that motion to suppress evidence after all. That's been waived. And that's when Mr. Gardner fires him, and the court appoints a new attorney to take over. The new attorney eventually, and that's when the new attorney files the motion to withdraw the plea of guilty, and that is denied. Eventually, the new attorney files six additional objections to the pre-sentence report that were granted that the first retained attorney missed. So there's a long trail of inefficiency in attentiveness from the first retained attorney, which culminates in this advising Mr. Gardner, we can file that motion to suppress evidence after you plead guilty, Your Honor. What about the delay between the new attorney coming along and the filing of the motion to set it aside? It appears to me, Your Honor, that's the biggest matter that weighs against Mr. Gardner. There was a seven-month delay. It did take the new appointed attorney some time to get up to speed, but it wouldn't have taken seven months. I agree with that. But this court did find in the McDonnell case in 2011 that the involuntary plea based on ineffective assistance even overcame a nine-month delay in the McDonnell case. So we think there has been a holding in this case and in the previous case. In the McDonnell case, how sort of unscored or weigh-in heavily on the right to appeal, you know, as made, I mean, you said it's on point, but I'm seeing in McDonnell, the motion to suppress was dropped, and McDonnell is about the right to appeal. So it's a security issue weighing in on Cyrus and the right to appeal versus... Yes, sir. I think what the court focused on in both of those cases was the ineffective assistance. In McDonnell, the attorney in that case advised McDonnell that he would have the right to appeal his motion to suppress evidence later. That was the ineffective assistance. In our case, the attorney advised Mr. Gardner that he could file the motion to suppress without guilty. That was the ineffective assistance. Yes, sir. Yes, sir. So that is the second ground that we raised, is that the district court erred in not holding an evidentiary hearing. And so... Yes, sir. Yes, sir. As a member of the Federal Defense Bar, it's incomprehensible to me that a lawyer would advise a client, well, you can go ahead and plead guilty today. I'm bringing you the proposed plea bargain agreement for the third time. I haven't discussed it with you, but you can go ahead and plead guilty today, and I'll file the motion to suppress later. It's incomprehensible that a lawyer would make a mistake of that magnitude. And so we think at the least, Your Honor, this court should send this case back with the order for the district court to have an evidentiary hearing on it. Yes, sir. Yes, sir. I have spoken to the lawyer, the first retained attorney. He told me he did not tell Mr. Gardner that. Now that's what he told an appellate lawyer snooping around. Whether he would say the same thing in front of a federal district judge under oath and penalty of perjury, I don't know what he would say, Your Honor. That's correct, Your Honor. Mr. Gardner pled guilty without signing that plea bargain agreement, so there was no formal signing. Yes, sir. Yes, sir. And it went through the usual Rule 11 plea colloquy, and based on what Mr. Gardner had been told at the time, he did plead voluntarily. Nobody had coerced him or forced him or paid him to plead guilty that day, but he pled guilty with the understanding his attorney would file a motion to suppress afterwards. He did, Your Honor. As an attorney looking back at it, I find the retained attorney's performance to be deficient. Mr. Gardner did not express any dissatisfaction. You get the maximum sentence, a statutory maximum of 240 months, Your Honor. Yes, sir. Well, as alleged in the motion, there is, Your Honor, and that was what was before the district court. The district court ruled summarily the day after the motion was filed and denied the motion to withdraw the plea of guilty the next day. I don't know what time or what day, which day that motion reached the district court's desk. I don't know if it reached it the day it was filed or the next day, which was the day he denied it. I don't know. I don't know how much time the district court spent in analyzing it and responding to it. I will say that at this time, the district court had been recently appointed, though I believe he had been a magistrate judge for a number of years earlier in his career, so it's not as if he were unfamiliar with federal criminal practice, but he was familiar with the district court bench. But I should also say that I've appeared before him on multiple occasions and I've always found the district court to be very fair and fair. You know, a 20-minute hearing would save everybody a lot of time. I don't think I'm going to have a problem filling my time, Your Honor. That's what you're suggesting. I'm talking about a 20-minute hearing before the district court would have saved everybody a lot of time, up or down. Thank you, Your Honor. May it please the Court. Anthony Rodriguez of the United States. Your Honor, this is a case at its core where it appears that we have an ineffective assistance of counsel claim masquerading as a motion to withdraw a guilty plea. I was prepared today to reiterate the car factors that I prepared in my brief, but given the court's attentiveness to specific components of it, I will save the court's time and I will stand on my brief with respect to the actual innocence claim as to whether the government suffered prejudice. I will note on the extent of delay question that Your Honors were asked, I think the important note is that this was approximately 11 months, and this court in previous cases has held as short as 69 days was undue delay, as this court indicated, and it was Renard and three months was undue in Brewster. And so I think the amount of time in this case far exceeds what this court has already held as an undue delay. Speaking of delays, I noticed that he pled guilty in March of 2019, and the pre-sentence report was prepared in June of 2019. My understanding on that, Judge Higginbotham, was that there was a series of unopposed continuances that were mutually granted that led to that. One of the common threads, I believe, in this case is the lack of evidentiary development. I can't exactly provide the answer as to what caused that, but only that it did appear that it was on the basis of a mutual agreement, Your Honor. And as to the inconvenience and judicial resources, again, not raised, I'll stand on brief. As to the close assistance problem, which is what I think is, in essence, going to be central to this discussion. In United States v. Struthers, which I believe Judge Higginbotham, in writing for the court, the opinion stated that ineffective assistance . . . excuse me, close assistance is a distinct inquiry from ineffective assistance. And in order to satisfy that component, the counsel must be, one, available to the defendant, and two, if the defendant expresses his satisfaction with the And what we have here in this case, Your Honor, is on the record from the Rule 11 colloquy on Record 163. Your Honors will see that Mr. Gardner did, in fact, express satisfaction with counsel. But at that point, counsel, he was told, I guess, that you could file your motion to suppress after you plead guilty. How was he to know that that was . . . I mean, how is he as a layperson, non-lawyer, to know that that's incorrect as a matter of law? In other words, if he was operating under a misimpression, can we excuse his statements under oath during the colloquy? Well, Your Honor, I think the problem with the statements that we've heard with what Mr. Gardner's position was is there's no . . . there hasn't been a hearing or anything to develop that. That claim was . . . none of those claims were made in the court below. And so what we're going off of is, as Your Honor requested, was there an affidavit? No, there was not. There was nothing filed to substantiate further. And so I think if . . . I would say it's premature, Judge Wilson, to answer that question, because we don't know for certain that this, in fact, alleged course of events took place as they have been represented to the court. Well, if it's premature, don't we then have to send it back for a hearing? No, Your Honor, because I think the statements that the defendant made, although I understand the question being if he's operating under a misconception, I believe the Rule 11 colloquy was so thorough, and in specific, there was a defendant who came . . . as my friend noted in his brief, there were a number of individuals present at that Rule 11. This was not an individual Mr. Garner got called in, and he was individually before their court. There was, I believe, five other people. And one of the defendants, when asked a question about his counsel and whether he was satisfied, he gave what in the record says is an indiscernible response. So I don't even know what he said to the magistrate judge, but I do know that the magistrate judge's response was, well, hold on now. If you're not satisfied or if you don't understand what's going on, I'm going to give you time. Go talk to your attorney. I do know that the next defendant to be before the judge was Mr. Garner. So Mr. Garner was there to watch that happen, where there was something that didn't flow as it normally would have during the course of a Rule 11, and the judge paused, did not allow that individual to go forward until he was certain that he was ready to proceed. That still doesn't seem responsive to Judge Wilson's query, because if the individual has a problem, they don't know what they don't know. So I get your point that he had seen somebody who wasn't ready to fully go and knew, quote-unquote, that that could happen, but to the question of Judge Wilson, if you're thinking everything's hunky-dory based on what your lawyer says, I mean, that doesn't really help you. I mean, I get your argument, but it just . . . it doesn't really help you if you don't know what you don't know. Or you're saying, I'm satisfied with counsel because I'm thinking, well, what you said is okay. Well, I guess what's responsive to that is, during the Rule 11, the magistrate judge specifically asked whether he'd went over any defenses with the accused, and his answer was, again, in the affirmative, that there was no issue raised. And so while I understand that there is an obvious disparity between counsel and the accused, I mean, I think the Rule 11 colloquy as provided was extremely comprehensive, again, as evidenced by the fact that there was a pause. But I think that the assertions that we're hearing here are standing in contradiction to what happened at the Rule 11. One of the things we're inquiring as to whether or not he understood the plea and the consequences, et cetera. And he's sitting there, but he says, with a misapprehension, that I'm pleading guilty, but we're going to have a hearing of a motion to suppress. I don't think that . . . it doesn't strike me that the colloquy here solves the problem. I mean, it's adequate. I assume it's the full, and I'm sure I'm confident it was. I haven't read it, but that's just the basic. Well, I believe, as this Court wrote in the United States against McKnight, when addressing an ineffective assistance claim, this Court had held that the motion to withdraw a guilty plea was not the appropriate place to flesh that out, but rather in post-litigation proceedings akin to a 2255. In fact, I believe, Judge Stewart, I think that was your opinion in McKnight, where that was the Court's position. And I guess the issue in coming to this is, while I understand there are assertions of a lack of understanding, it just doesn't appear to me that those are sufficiently borne out. And what I do understand is that inasmuch as we're contemplating the sixth factor, which my friend stated was the single most important, it asks whether the plea was knowing and voluntarily given, which, as this Court is no doubt aware, requires a two-part inquiry where the Court looks to whether the individual understood the consequences of pleading guilty and whether they had entered into that plea free of intimidation. And when an individual at that proceeding states under oath that neither of those two conditions exist, that he did know what the penalties were after the magistrate judge read the maximum penalties he was to face and asked him specifically whether anybody had threatened him to get him to plead guilty, there's a presumption that's created that the plea that was given is in fact valid. It's a presumption, but if he's traveling under a misimpression about what his rights and remedies are, particularly to a motion to suppress, back to the original point, what good does the plea colloquy do? I mean, I know we give great weight to statements under oath in court. I think that's very important. I think it's also very important for them not to come back after the fact and say, well, no, I just kind of rethought it. I didn't mean what I said. But that doesn't seem to be what's going on here. Well, I think — I guess I would — what I would try to say back to you in that respect, Judge Wilson, is that the issue with allowing this case to — okay, so I can conceive a scenario where there is some affidavit, there's some evidentiary support to substantiate this, or that we would be on a different footing than where we are at this juncture because there would be something to substantiate it. And I'm not saying that what Mr. Gardner is alleging is not true, but the reality is it is an — An affidavit by whom? I mean, Your Honor, if we have one from counsel stating if there was something where Mr. Gardner had even written something down as to what his grievance was, I mean, there's a number of times in cases that I deal with back in El Paso where defendants will handwrite letters to judges that become part of the record. There would at least be some evidence with which to direct the court to as to the validity of the claim. The problem we have is this came 11 months after he had already pleaded guilty. And I'm not going to stand here and make an accusation, but that's a substantial amount of time to make what is on its face a very direct claim. To me, it seems curious that it took that long for this to come into existence. And I think the problem with allowing this case to procedurally move and the court to contemplate a remand is it's no different than what the analysis on the first prong, the actual innocence. And as the court had noted, it would essentially invite automatic that right to anyone who post hoc after their plea decides to say, well, my counsel was ineffective and I believe you should let me withdraw without any support at all whatsoever. And I think that's the challenge that this court will encounter in embarking down that road on these facts. Now, as I said, I'm not going to say that this is a never scenario. It's certainly not. Because I understand the concerns that you've expressed, Judge Stewart, with the comparative lack of understanding. And I don't think it would be fair for this court or any court to expect the criminally accused to know every single rule that would apply to them. But that's where the magistrate judge comes in, is to attempt to explain the rights as they need to understand them before they can plead, knowing in this case that there was a 240-month mandatory minimum that he was facing. And so while I understand Judge Higginbotham's concerns that the Rule 11 may not have fully addressed, that's the mechanism that is in place to attempt to prevent issues just like this from occurring. And so I think that the issue is then, in light of all of the car factors, has Mr. Gardner proved that there is a just and adequate reason? And I don't think, on this record, he has. Because the only issue that I — the only factor that I believe can weigh in his favor would be the government prejudice prong. I mean, given that the time from when the order came to the district court, it was a day when he granted it. So I think — I don't want to stand here and make the general arguments of, you know, memory and things that you would see in any other brief, because, again, Your Honors have seen those a million times. I don't think that there's a distinct prejudice that the United States is prepared to point to in this case. However, as this Court noted in McKnight, the second prong is insufficient by itself to justify the relief that's sought in this case. And I believe that the prongs that do stand a little higher, I understand that there's no factor or combination of factors that can produce a result, but it certainly seems that the inconvenience prongs tend to yield to close assistance and the knowing involuntariliness of the plea as it came in. And I don't believe, given that the record makes quite clear, that Mr. Gardner did, in fact, have the chance to, you know, array any concerns he had, one, not only because he was asked, but, again, because he watched another individual do that. Now, I do understand that Mr. Gardner, this was certainly not his first time before the Court, but I don't want to put that against him in a sense that that should, in fact, make him some sort of an expert. Again, I believe that would be extremely unfair. But it is different in the Rule 11 in that he was right there when he saw all he needed to do if he wanted to raise and how the Court would treat it. He wasn't going to be scolded. He was going to be given every opportunity. In fact, the judge went as far as to say, I want you to explain now. I don't want you to wait until you receive a sentence that you don't like or some outcome that you don't agree with to bring this, to bring a claim that you want to withdraw. And so I think that that is what makes this case distinct in the run of cases and I believe is an important factor for the Court to bear in mind when moving forward and analyzing the totality of this as CAR does require in determining whether Mr. Gardner's guilty plea or his request of withdrawal should be granted. So beyond the government's other arguments, you feel like the 11 months would make this an outlier in and of itself? I don't think the 11 months does it in and of itself. I believe that Mr. Gardner can also not make the close assistance argument given that he had counsel there and he stated. I wasn't limiting your argument to that. I was just saying you pressed hard to say if we've said 39 days or whatever it is, my takeaway from that point is you're saying putting the other things aside, the 11 months would make it an outlier in that sense. I agree, and I believe so. I'm just saying that's in essence what you're saying. I think so, Your Honor, because I believe that there are probably I don't want to suggest that I counted, but I'm certain that there are a number of cases where the Rule 11 went and the individuals admitted that they understood what the penalty was and that nobody induced them. So I don't think that's a distinct one. So I think if I had to pick one of the factors, I believe it's likely the delay or the close assistance argument that doesn't cut in favor of Mr. Gardner as well. I think those are the two strongest. I would also note that the second issue in this case does indicate that it is Excuse me. The second question is whether the district court erred in refusing to hold the evidentiary hearing. Well, in this context, the two questions are interlinked. If the defendant can make the car factors, then it appears it is an error if the district court did not hold the hearing. But if the contrary is true and that there was no support under Carl, then it is not an error to refuse to hold the evidentiary hearing. And so the United States position, unsurprisingly, is that the district court did not err in denying the motion to withdraw or for refusing to hold the evidentiary hearing because in absence of the car factors, this Court has said that, and I believe it was the United States against Powell, that a district court is not required to hold the evidentiary hearing when the car factors are unmet. And as I had mentioned with the remaining issues that are not addressed, I believe to look to the questions that were presented to my friend, I believe during the course of our discussion, Your Honor, I've also swept all of those up. And if the Court has no other questions, I would yield back the remainder of my time, but I would like to ask this Court, the United States respectfully requests this Court to affirm the decision of the district court in this case. Thank you. All right. Thank you, sir. All right. We're back to you, Mr. Young, for rebuttal. Yes, sir. I have three matters I'd like to briefly mention, Your Honor. One is regarding the delay issue. Again, it was approximately 12 months, just under 12 months delay from the time of the plea of guilty until the motion to withdraw the plea of guilty was filed. Again, the first five months the retained attorney was still on the case and didn't do anything. Long history of inadequate performance. Secondly, I remind the Court that there is one case that this Court has decided that is exactly on point with our facts, and that's the McDonald case. And in that case, this Court excused a nine-month delay where we would have a seven-month delay in our case after the new attorney takes over. Secondly, Mr. Rodriguez distinguished between close assistance of counsel, which is one of the seven car factors. Has the defendant received close assistance? That's different from ineffective assistance, and that is correct. Mr. Gardner's retained attorney failed on both points. He did not provide close assistance as to repeatedly turning up at rearrangement with a proposed plea bargain agreement that he has not discussed and not been out to the jail to talk to the client about. He also fails on the ineffective assistance. And if ineffective assistance becomes important in the car factors, it comes into the sixth car factor of making the plea involuntary. So in this case, the retained attorney did not provide close assistance. He was negligent, distant, unavailable. And secondly, he also committed ineffective assistance, which led to the involuntary plea. On the car factors, Your Honor, the seven car factors listed that the court is to use in deciding whether to allow a plea of guilty to be withdrawn, we believe that Mr. Gardner wins on six of those. The one that cuts against him is the delay. But again, in the McDonald case, this Court found that the involuntary plea was so important because it waives constitutional rights that it overcame a nine-month delay. And so finally, Your Honor, I'll simply say I found one case where this court found that a district court had abused its discretion in refusing to permit a defendant to withdraw his plea. That's the McDonald case, and it is exactly on point with our case factually. Let me clarify one confusion in my mind about the timeline. He pleads guilty March 2019, and the initial pre-sentence report was spread in June 2019. At that time, if you explain that by motion, I don't understand how he pleads guilty and then asks for delays in a presentation of pre-sentence report. Normally what happens is they plead guilty, and then, of course, the pre-sentence process goes forward. But that's a substantial delay in coming forward with a pre-sentence report. I don't know if that's attributable to his request or not. Your Honor, the typical procedure in the Waco Division of the Western District is a defendant pleads guilty. About two months later, the pre-sentence report is ready, and the sentencing occurs within two weeks or so, about two weeks after that. So I don't know why there would be such a long delay. Well, it was from March of 2019 to June of 2019. So my point, I was just trying to get the delay weighing against him for the time that he took. I don't know what to do with it. On the other hand, it takes that many months to even prepare a pre-sentence report. I'm not a stranger to the district court. I've trained a lot of people. I don't ever recall a pre-sentence report being that late, taking that long. Of course, I was in Dallas, not in the Northern District, not in the Western District. Yes, sir. It seems I do remember at some point, Your Honor, I don't know if it was shortage of staff in the probation office, but it seemed like there was a period when pre-sentence reports were taking a little longer. I'm not complaining of the delay because I've become confident that it was unavoidable. But the question is whether that time is chargeable to him or to the government. Yes, sir. Yes. Thank you. All right. Anything further, counsel? Nothing further, Your Honor. All right. As I always like to say and need to say, you're CJA counsel and I couldn't underscore enough the value of you and all others similarly situated for handling the many cases that you get under difficult, to put it mildly, circumstances here, the pandemic and all that sort of stuff. On behalf of the panel and the Fifth Circuit as a whole, we thank you for your service and others. Thank you, Your Honor. All right. Thank you and thank you, Mr. Rodriguez, for good briefing and good argument and responsiveness to the court's questions. The case will be submitted and we'll figure it out. All right. Thank you. All right. Next case, 20S50994, Lindsay v. United States.